M. FERST'S SONS & CO. v. POWERS.

1. CAUSES OF ACTION—UNION OF—FRAUD—ATTACHMENT—EQUITY—
   PLEADINGS—ASSIGNMENT.—An action on account for goods sold
   and delivered may be joined in one complaint with one to set aside
   a sale of a stock of goods, as a fraud upon creditors and a violation
   of the assignment law, and attachment may issue.
2. ATTACHMENT.—Under 23 Stat., 30, affidavits upon which warrant of
   attachment issues should be filed at time of issuance or within forty-
   eight hours afterwards.
3. IBID.—AGENT—TELEGRAMS.—Name of plaintiff may be signed to at-
   tachment undertaking by agent, by authority of attached telegram.
4. IBID.—FRAUD.—Facts stated in the verified complaint and affidavits
   show such fraudulent sale of property as will warrant issuance of
   attachment.

Before BUCHANAN, J., Laurens, January, 1900.    Re-
versed.

Action by M. Ferst's Sons & Co. and J. J. & J. E. Maddox against John H. Powers and John W. Fowler, on following verified complaint:

"The plaintiffs above named, by Irby & Babb and Graydon & Giles, their attorneys, complaining of John H. Powers and John W. Fowler, the defendants aforesaid, allege:

"I. That the said plaintiffs, Joseph Ferst, Aaron Ferst, and Leon Ferst, are and were at the times hereinafter set forth partners doing business under the firm name of M. Ferst's Sons & Co.

"II. That the plaintiffs, J. J. Maddox and J. E. Maddox, are and were at the times hereinafter set forth partners doing business under the firm name of J. J. & J. E. Maddox.

"III. That the defendant, John H. Powers, was until about the 13th day of December, A. D. 1899, engaged in the mercantile business in the city of Laurens, in the county and State aforesaid..

"IV. That at divers times during the years 1898 and 1899, the said firm of M. Ferst's Sons & Co. sold and delivered to the said John H. Powers sundry articles of goods, wares and merchandise by open account, on which there is now due and unpaid the sum of $967.75.

"V. That at divers times during the years 1898 and 1899, the said firm of J. J. & J. E. Maddox sold and delivered to the said John H. Powers sundry articles of goods, wares and merchandise by open account, on which there is now due and unpaid a balance of $456.70.

"VI. That on or about the 13th day of December, A. D. 1899, the said John H. Powers transferred and delivered to the defendant, John W. Fowler, his entire stock of goods in his store in the said city of Laurens, consisting of staple and fancy groceries, and other articles.

"VII. That the plaintiffs are informed and believe, that the pretended consideration for the said transfer and delivery of the said stock of goods was an agreement by the said John W. Fowler that he would satisfy a claim of $400 alleged to be due and owing him, the said John W. Fowler,

by the said John H. Powers for rent of the store lately occupied by him in the said city of Laurens, and that he, the said John W. Fowler, would pay sundry claims alleged to be due by the said John H. Powers to the following named parties, to wit: To one W. A. Todd, lately a clerk in the store of the said John H. Powers, the sum of $500, alleged to be due to him by the said John H. Powers on his salary as such clerk; to the People's Bank of Laurens, a certain promissory note, the amount of which is not known to the plaintiffs; to Bailey's Bank of Clinton, a certain promissory note, the amount of which is not known to the plaintiffs; and to the Bank of Laurens, a certain other note, the amount of which is not known to the plaintiffs.

"VIII. That the plaintiffs are informed and believe, that the said stock of goods was worth at cost price the sum of $1,800 or $2,000, and that the said John H. Powers claims to have sold the said stock of goods to the said John W. Fowler at eighty per cent. of their said cost price.

"IX. That the plaintiffs are informed and believe, that at the time of the said alleged sale the. said John H. Powers was totally insolvent, and had not enough property to pay the debts due and owing by him.

"X. That the plaintiffs are informed and believe, that the amount now claimed to be due and owing to the said John W. Fowler by the said John H. Powers for rent is larger than the amount actually due, and that the amount actually due is only about $200; and the plaintiffs also are informed and believe, that the amount alleged to be due to the said W. A. Todd by the said John H. Powers is much greater than the sum actually due to him.

"XI. That the plaintiffs are informed and believe, that the said alleged sale was made for a consideration much less than the real value of the said stock of goods; that it was in part voluntary and pretensive, and that it was made and accepted with the intent and purpose to hinder, delay, defeat and defraud the creditors of the said John H. Powers, and especially these plaintiffs, who are the largest creditors of

the said John H. Powers, as they are informed and believe.

"XII. That the plaintiffs are informed and believe, that the said alleged sale was made and accepted with the intent and purpose to give to the said John W. Fowler, W. A. Todd, the People's Bank, Bailey's Bank, and the Bank of Laurens a fraudulent and unlawful preference over the other creditors of the said John H. Powers; and they are advised by their counsel that the same is in effect an assignment with preferences, and is contrary to the assignment acts of this State.

"Wherefore, the plaintiffs demand judgment against the defendants: 1st. That the plaintiffs, M. Ferst's Sons & Co., have judgment against the defendant, John H. Powers, for the sum of $967.25. 2d. That the plaintiffs, J. J. & J. E. Maddox, have judgment against the defendant, John H. Powers, for the sum of $456.70. 3d. That the said alleged sale of the said stock of goods be set aside and be declared to be fraudulent and void. 4th. That the plaintiffs may have such other and further relief as to the Court may seem to be just and proper."

Upon motion to dissolve the attachment upon the grounds set out in the opinion, Jude Buchanan passed the following order:

"This cause came before me on a motion at chambers to set aside an attachment given by the clerk of Court for Laurens County. The motion is made on several grounds. The allegations of fraud in the affidavits make out a *prima facie* case so far as such a claim could well be made such by conclusion. If unrebutted, the inference of improper conduct would be strong. The grounds for setting aside is based upon several objections growing out of alleged defects in filing the affidavits, making up the undertaking, alleged insufficiency of the matters stated in the affidavits, and in failing to state fact showing fraudulent disposal of property or a fraudulent assignment of the same, and lastly because attachment will not lie under such an alleged cause of action.

26—58

To understand the effect of this last objection, the complaint must be referred to. There are two plaintiffs, it will be noticed—Ferst's Sons & Co. and J. J. & J. E. Maddox—two independent claims for goods sold, or alleged to have been sold, and delivered to John H. Powers, who was, until about 13th December, 1899, engaged in mercantile business in the city of Laurens. That on that day (the said 13th day of December, 1899), the defendant, Powers, transferred and delivered over to Fowler, his codefendant, his entire stock of goods, under an agreement (?) whereby the said Fowler, it was claimed, was to satisfy a claim of $400 alleged to be due and owing to said Fowler for the rent of the store lately occupied by him, and in addition the said Fowler was to pay sundry claims alleged to be due by Powers to the clerk, W. A. Todd, to the People's Bank of Laurens, to Bailey's Bank of Clinton. It is charged that the goods so conveyed were worth the sum of $1,800 or $2,000, and the said Powers claimed to have sold the stock to Fowler at eighty per cent. of the cost price. That the said John Powers was totally insolvent and had not any property to pay the debts due and owing. They further say that the amount due to Fowler and to Todd was not as much as was claimed by Powers; that it was, in fact, voluntary and pretensive, and that it was made and accepted with the intent and purpose to hinder, delay, defeat and defraud the creditors of Powers, and especially these two firms, plaintiffs, who are the largest creditors of the said John Powers. It was charged that the said sale was made and accepted with the intent and purpose to give to the said John W. Fowler, W. A. Todd, the People's Bank, Bailey's Bank, and the Bank of Laurens a fraudulent and unlawful preference over the other creditors of the said John H. Powers, and they are advised by their counsel that the same is in effect an assignment and preference, and contrary to the assignment acts of this State, and after demanding judgment for the amounts claimed to be due each of the plaintiffs respectively, it is further demanded that the said alleged sale of the said stock of goods be set aside and

declared to be fraudulent and void, and that the plaintiffs
may have such other and further relief as to the Court may
seem just and proper. It is to be observed that W. A.
Todd, Bank of Laurens, Bailey's Bank, and People's Bank
are not made parties. The objection to the form of the
complaint and its character is material here, for if there was
no cause of action, or an appropriate cause of action, there
could not be a proper attachment under it. It may be
observed that giving the complaint the most liberal construc-
tion, it is rather to be construed as demanding an equitable
relief, than any relief at common law. By giving it the
effect of an equitable proceeding, the joinder of two inde-
pendent demands in the same complaint may not appear so
unusual, though it is contrary to the rule in that character of
cases. Evidently the purpose was to make a creditor's bill
and to create an equity thereby and a lien upon the property
of the debtor, Powers, and thus to hold it by the hands of the
Court to respond to the demands of plaintiffs and all credi-
tors equally. This much it has been thought best to say
with reference to its character. Fraud and collusion is
charged, whereby it was intended to defeat, hinder, delay and
defraud the other creditors. This being the character of
the complaint, will attachment lie? I do not think that
attachment is the proper remedy in actions of an equitable
nature. I do not think that the usual equitable verdict
should be displaced by so stringent, rigid and harsh a pro-
ceeding as that by attachment in the first instance. 'An
attachment can only be considered in the light of an action at
law.' *Havis Trapp Gresham* (?) v. *Deale*, 2 N. & McC.,
132. See, also, 1 Wait's Acts. & Defs., 441; Drake Attach-
ment Acts, 40 (?) 3 Ency. Law (2d ed.), 184. I do not
construe *Bank* v. *Stelling* as contradicting this view. Here
the defendants are both residents of the State. The nominal
ownership at least is in Fowler. It is true, the creditor has
the choice of remedies. See *Miller* v. *Harper*, 33 S. C., 542;
*Busch* v. *Brantly*, 20 S. C., 503; *Amaker* v. *New*, 33 S. C.
I do not think he can exercise the common law (or statu-

tory) and equitable at the same time by using one cause of action and a remedy appropriate to another at the same time. The sale is alleged to be in part at least fraudulent. If the attachment is issued, it must be issued for all the matters and things charged in the complaint in this case—as well for the matters charged to have been done honestly as for those done fraudulently. Whereas, it should issue (if at all here) only by reason of the fraud done. I do not think attachment was ever intended to supply the place of any equitable process, injunction, etc. By referring to the character of the complaint, I am by no means satisfied that in its statement of an equitable cause of action that it is sufficient (but I do not pass on its insufficiency), however, inasmuch as the objection made is not that the statement is insufficient in not showing any cause, but that, being the statement of an equitable cause of action, attachment cannot issue in its enforcement or as an aid or remedy for or dependent ( ?) upon such equitable action. Having decided that an attachment will not lie under such a complaint, the other grounds become of no avail and need not be considered. Wherefore, it is ordered, that the writ heretofore issued by the clerk of Court be set aside, vacated, and declared vacated, and that the attachment or action based upon such writ be set aside, and be considered released."

From this order plaintiffs appeal.

*Messrs. Irby & Rabb* and *Graydon & Giles,* for appellants, cite: *Attachment will lie in such action as this:* Code, 248; 31 S. C., 68.

*Messrs. Ferguson & Featherstone,* contra, cite: *Attachment will not lie in an equitable action:* 56 Miss., 267; 13 R. I., 532; 2 Mich., 418; 29 Miss., 777; 36 N. J. L., 304; 2 N. & McC., 132; 3 Abb., 248; 9 Bosw., 601. *Creditor can sue in equity to set aside fraudulent sale, or sue on account at law, and sell property under judgment:* 33 S. C., 542, 28; 20 S. C., 503.

Aug. 2, 1900.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.   The two plaintiffs in this case, being separate and distinct mercantile firms, claiming to be creditors of the defendant, John H. Powers, who up to the 13th of December, 1899, was engaged in the mercantile business in the city of Laurens, united in this action, which was commenced on the 20th of December, 1899, for the purposes hereinafter stated.   No question seems to have been raised as to the propriety of these two plaintiffs thus uniting in this action, and hence we say nothing as to that.   The object of the action will best be disclosed by a copy of the complaint, which was verified, as set out in the "Case," and for this reason the reporter will incorporate the same in his report of the case.   It will be convenient, however, to state, in general terms, that the action seems to have been for a two-fold purpose: 1st. To obtain judgment against the defendant, Powers, in favor of the several plaintiffs, for the amounts alleged to be due them respectively.   2d. To set aside an assignment or transfer by the defendant, Powers, to his codefendant, Fowler, of his entire stock of goods, for the purpose of applying the same to the payment of certain debts alleged to have been due to the said Fowler and certain other specified persons, by the said Powers, because such assignment or transfer was void under the assignment act, as well as under the Statute of Elizabeth.   "At the time of commencing the action, a warrant of attachment was obtained from the clerk, which was duly served on both Powers and Fowler, at the time of the serving of the summons and complaint.   Copies of the affidavits on which the warrant was issued were also served on said parties, and the originals filed in the clerk's office."   In this quotation from the "Case," it is not stated when these copies of affidavits were served, or when the originals were filed in the clerk's office; but those facts, it is claimed, will appear in the affidavit of the clerk, which will hereinafter be referred to. Soon thereafter the defendants moved before his Honor, Judge Buchanan, to vacate said attachment upon the follow-

ing grounds: "1st. Because the original affidavits upon which the warrant of attachment is based were not filed in the clerk's office at the time of the issuing of the warrant, as required by law. 2d. Because the bond is not signed by plaintiffs. 3d. Because the affidavits are insufficient, in that they fail to state any facts going to show a fraudulent disposal of property or a fraudulent assignment of property, such as is contemplated by the attachment act. 4th. Because the affidavits fail to state facts showing any fraud at all on the part of defendants. 5th. Because an attachment will not lie in this action." On the 8th of January, 1900, the Circuit Judge granted an order setting aside the attachment, a copy of which is set out in the "Case," which should be likewise incorporated in the report of this case.

From this order plaintiffs appeal upon the several grounds set out in the record, which need not be stated here, as they make, substantially, but two questions: 1st. Whether the action, in aid of which the attachment was issued, was for equitable relief only. 2d. Whether in such an action a warrant of attachment can be issued.

The defendants, in accordance with the proper practice, have given notice that, in case this Court should be unable to sustain the order of Judge Buchanan on the ground upon which he rested his conclusion, they would ask this Court to sustain said order upon the four first grounds upon which they rested their motion to vacate the attachment, which are set out above.

Our first inquiry, then, is whether this was an action for equitable relief only. It is well settled, under the Code of Procedure, that a plaintiff may unite in the same complaint both legal and equitable causes of action—and that is exactly what was done in this case. The complaint sets out a cause of action for goods sold and delivered by the plaintiffs to the defendant, Powers, and demands judgment against him for the amount thereof—and this is, surely, nothing but a legal cause of action, pure and simple, without any feature of equitable cognizance. It is true, that

there is another cause of action set out in the complaint, against both of the defendants, which is of an equitable character, to wit: that upon which the relief demanded is that the assignment by John H. Powers to his codefendant, John W. Fowler, of his entire stock of goods, should be set aside, but that does not invest the whole action with the character of an equitable action; for if, upon the trial, the plaintiffs shall fail to establish their equitable cause of action, that would not prevent them from obtaining judgment against Powers, if they shall establish their claims for goods sold and delivered. In the case of *Magruder* v. *Clayton,* 29 S. C., 407, that was the result in just such a case as this. See, also, *Adler* v. *Cloud,* 42 S. C., 272, to the same effect. In both of those cases the actions were brought for the double purpose of setting aside certain assignments and transfers of property, and at the same time for the purpose of obtaining judgments against the debtor on the claims alleged to be due to the plaintiffs; and in both of the cases, after the plaintiffs had failed to establish their equitable cause of action, their right to establish their legal cause of action was distinctly and fully recognized. See, also, to the same effect, *Bank* v. *Stelling,* 31 S. C., 360. It seems to us, therefore, that the Circuit Judge was in error in holding that this was an action for equitable relief only, and, therefore, not such an action as would enable the plaintiffs to resort to the remedy by attachment. For, as we have seen, the action was founded upon two causes of action—one of a purely legal character and the other equitable in its character; and hence there was error in setting aside the attachment on that ground only. Under this view, it becomes unnecessary to consider the question whether an attachment can be resorted to, in an action of purely equitable cognizance, as this is not such an action and, therefore, no such question can arise in this case.

We will next proceed to consider the additional grounds relied upon by the defendants to sustain the order appealed from. 1st. This ground is based upon the theory that the

law requires that the original affidavits, upon which the warrant of attachment is based, should be filed in the clerk's office *at the time of issuing the warrant.* The law upon this subject is to be found in sec. 250 of the Code, as amended by the act of 1899—23 Stat., 30; and the particular language relied upon seems to be the following: "It shall be the duty of the plaintiff procuring such warrant, at the time of the issuing thereof, to cause the affidavits on which the same was granted to be filed in the office of the clerk of the Court of Common Pleas, or with the magistrate, in which or before whom the action is to be tried, within forty-eight hours after the issuance of the attachment." While there is an apparent conflict in two of the clauses of the sentence just quoted from the statute, as the first clause seems to require the filing the affidavits, *at the time* of issuing the warrant, while the last clause requires that the affidavits be filed *"within. forty-eight hours after"* the issuance of the attachment, yet it is the duty of the Court to reconcile such conflict if possible; and this may be done by reading the sentence somewhat in this way—declaring that these papers must be filed at the time of issuing the warrant or within forty-eight hours thereafter. This would give effect to every part of the sentence; while that contended for by respondents would completely ignore the provision that these papers should be filed within forty-eight hours after the issuance of the attachment. Besides, the manifest object of the act of 1899, in which the words relied upon are found, was to amend sec. 250 of the Code by reducing the time within which the affidavits were required to be filed, from ten days after issuing the warrant to forty-eight hours; and to adopt the construction contended for would defeat that object. But if there is a clear and absolute repugnancy, which cannot be reconciled, between two sections of a statute, or between two clauses of the same section, then the last must be preferred to the first. Potter's Dwar. on Stat., 132; Endlich on Interpret. of Statutes, sec. 183; and if we are forced to resort to this rule, then it follows that

if the affidavits are filed within forty-eight hours after the issuance of the warrant of attachment, the statute will be complied with. This being the law, it seems to us that the two affidavits of the clerk set out in the "Case" are sufficient to show that this requirement was complied with. The first ground upon which the motion to vacate the attachment was based cannot, therefore, be sustained.

2d. The second ground upon which the motion was based—that the bond (meaning, no doubt, the undertaking required) was not signed by the plaintiffs. It appears from the statements made in the "Case" that this undertaking was signed as follows: "Joseph Ferst, Aaron Ferst, Leon Ferst, as M. Ferst's Sons & Co., by T. D. Darlington, agent, J. J. Maddox, J. E. Maddox, as J. J. & J. E. Maddox, by Ellis G. Graydon, W. C. Irby." These signatures of the plaintiffs were made by T. D. Darlington and Ellis G. Graydon, respectively, under the authority of telegrams to these gentlemen, respectively, which were attached to the undertaking, and Mr. W. C. Irby signed his own name, doubtless, as surety. This, we think, was a sufficient compliance with the statute. The undertaking in attachment need not be under seal (*Grollman* v. *Lipsitz,* 43 S. C., at page 339), and, therefore, we see no reason why the names of the plaintiffs could not be signed by the gentlemen named as agents, under the authority of telegrams from the plaintiffs, which were attached to the undertaking. See what is said on this point in *Bank* v. *Stelling,* 31 S. C., at page 371. The second ground of the motion cannot, therefore, be sustained.

The third and fourth grounds of the motion may be considered together, as they both raise the question whether the affidavits set forth the facts showing such a fraudulent disposition of the property of the defendant as is contemplated by the attachment act. In sec. 250 of the Code, it is provided that a warrant of attachment may be issued "whenever it shall appear by affidavit that a cause of action exists against such defendant, specifying the

amount of the claim and the grounds thereof, and that the defendant * * * has assigned, disposed of or secreted, or is about to assign, dispose of or secrete, any of his or its property with the like intent"—that is, with an intent to defraud his creditors.   It seems to us that a casual reading of the affidavits will be quite sufficient to show that all these things are fully set forth therein.   There can be no doubt that the complaint, which is verified, and may, therefore, be used as an affidavit in an application for an attachment, fully sets forth the facts sufficient to constitute a cause of action at law against the defendant, Jno. H. Powers, the defendant whose property was sought to be attached; and in the affidavits the following facts were stated: that Jno. H. Powers was insolvent, a fact probably known to his codefendant, Fowler, from the circumstances; that the assignment was made but a very few days after Powers had received a considerable portion of his stock of goods; that the amount of the debts which were to be protected by the assignment were smaller than is represented by Powers, besides various other facts and circumstances going to sustain the general statement that the assignment was made with intent to defraud the creditors of Powers.   Indeed, the Circuit Judge in his decree says: "the allegations of fraud in the affidavits make out a *prima facie case,"* which, "if unrebutted, the inference of improper conduct would be strong;" and it does not appear that any counter-affidavits were submitted.   It seems to us, therefore, that neither the third or fourth grounds of motion can be sustained; and as the fifth ground has already been disposed of, we must hold that there was error in granting the order vacating the attachment.

It is the judgment of this Court, that the order appealed from be reversed.