15040

BILTRITE BUILDING CO. *ET AL.* *v.* ADAMS *ET AL.*

(7 S. E. (2d), 857)

October, 1939.

*Messrs. Hemphill & Hemphill,* for appellants,

*Messrs. Thomas, Cain & Black* and· *J. Q. Marshall,* for respondents,

March 15, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

Upon the verified petition of the respondents, Judge Bellinger ordered: "That Daniel Heyward, as President and General Manager of Winnsboro Granite Corporation, do appear before W. D. Douglas, Esq., Special Master, in his office in Winnsboro, S. C., on the 23rd day of October, 1939, then and there to be examined, under oath, concerning any monies, capital stock, bonds or other assets which Winnsboro Granite Corporation holds for or owes to Mariana T. Heyward and to bring with him for examination the Capital Stock Book of, the inventory of assets and liabilities of, the stockholders list of, and the minute books of Winnsboro Granite Corporation. Any *bona fide* appeal to the Supreme Court from this order shall act as a stay of this order until such appeal is determined."

It appears from the record that on May 21, 1938, Hon. A. L. Gaston issued his order requiring Mariana T. Hey-

ward to appear before W. D. Douglas, as special Master, to be examined under oath as to any of her assets. Later, on June 17, 1939, Judge Gaston made another order enjoining plaintiffs from proceeding with the examination of the defendant Mariana T. Heyward because of her ill health, but allowed plaintiff to make application to this Court, as it may be advised, for further orders in the cause. The plaintiff then made petition to Judge Bellinger, then presiding in the Courts of the Sixth Circuit, which petition contains the following averments:

"Plaintiffs are now informed and believe that the Winnsboro Granite Corporation is indebted to the defendant, Mariana T. Heyward, by way of monies, capital stock, bonds and other assets which said corporation holds but which in fact belongs, in whole or in part to the defendant, Mariana T. Heyward.

"Wherefore, your petitioners pray that an order do issue requiring Daniel Heyward as President and General Manager of Winnsboro Granite Corporation, to appear before W. D. Douglas, Esq., Special Master, to be examined under oath and to give testimony concerning any assets of, debts due, or property held by such Corporation of Mariana T. Heyward and to bring with him, for examination, the capital stock book, the inventory of assets and liabilities of, the stockholders list of, and the minute books of the Winnsboro Granite Corporation.

"Thomas, Cain & Black and
"J. Q. Marshall,
"Attorneys for Plaintiffs.

"Columbia, S. C.
"September 11, 1939.
"State of South Carolina
"County of Richland

"Personally appeared before me, J. Q. Marshall, who, being duly sworn, says that he is one of the attorneys for the plaintiffs and petitioners in the above-entitled action, and

that the foregoing petition is true of his own knowledge, information and belief.

"J. Q. Marshall.

"Sworn to and subscribed before me this 11th day of September, 1939.

"Pierce F. LaBorde (Seal)<br>"Notary Public for South Carolina."

Upon the hearing of the petition by Judge Bellinger, the attorneys of record for the appellants, Daniel Heyward and Winnsboro Granite Corporation, stated to the Court their objections to the issuance of any such order as was applied for; the grounds of objection being: 1. The petition does not conform to the statute giving the right to make such examination. 2. The petition was not an affidavit to the effect that Daniel Heyward or Winnsboro Granite Corporation had property of Mariana T. Heyward or were indebted to her in an amount exceeding ten dollars, in fact no affidavit of any amount. 3. That there was in the petition neither any statement of any fact upon the affiant's personal knowledge, nor so far as the petition might be on information and belief, no statement as to the source of the information or the grounds of belief. 4. That the order requested would, if granted, be in effect a subpoena *duces tecum* to a corporation, without any showing whatsoever of the corporation being in possession of any amount whatsoever, an unwarranted attempt to investigate the books of a corporation without any showing of right to do so. 5. That the petition taken as a whole showed on its face that it was nothing more than a "fishing expedition."

After argument, the Court allowed respondents to offer affidavits and exhibits for the purpose of showing to the Court that respondents were entitled to an order such as prayed for in the petition. Thereupon counsel for appellants, after permission obtained from the Court, retired from further participation in the hearing, but remained in the Court room out of courtesy to the Court.

Respondents introduced in evidence Judgment Roll No. 6155, being a transcript of judgment in the amount of $6,-703.00, with interest from November 10, 1932, filed May 8, 1935, against Mariana T. Heyward as a result of her having been a stockholder of the defunct Peoples State Bank of South Carolina. The roll also showed execution issued October 10, 1935, and *nulla bona* return by the sheriff of date October 26, 1935. The respondents also introduced portions of the records in the office of the Judge of Probate which show the will of B. H. Heyward, Sr., from which it is necessary to reproduce only the following excerpt as pertinent here: "I give, devise and bequeath to my beloved wife, Mariana Tabb Heyward, her heirs, executors, administrators and assigns, according to the nature of the property, all and singular my estate, of whatsoever nature and wheresoever situate; knowing that my said wife will make such disposition of my said esta^te as will be to the best interests of our children."

From the inventory and return of appraisers it appeared that B. H. Heyward, Sr., died seized and possessed, among other things, of 895 shares of the capital stock of Winnsboro Granite Corporation of the appraised value of $22,-375.00 ($25.00 per share), and 520 shares of the capital stock of Peoples State Bank of South Carolina, appraised at $5,200.00. Mariana T. Heyward was appointed by the will executrix thereof. There were also introduced her first and final return and petition for letters dismissory, dated November 8, 1932. Thereupon Judge Bellinger made the order hereinabove set forth, and this appeal followed, based upon 14 exceptions.

Counsel for appellants and respondents agree that the exceptions make three questions for the consideration of the Court, viz.:

"1. Did the so-called verified petition conform to the statute giving a judgment creditor the right to examine some

person or corporation or an alleged official thereof other than the judgment debtor?

"2. Was the trial Judge in error in failing to hold and find that petition of respondents was fatally defective and insufficient to warrant the issuance of any order for the examination of either of appellants, even after the introduction of the testimony permitted over objection?

"3. Even if respondents were entitled to any order for the examination of either of the appellants, was not the order entirely too broad and all-inclusive?"

Preliminary to the consideration of the issues thus presented to us, we may state two postulates which it will not need the citation of authorities to sustain.

First, the granting or refusing of a petition of the nature of that here involved is within the discretion of the trial Judge and his decision thereof will not be disturbed unless there is shown to be an abuse of his discretion.

Second, the Courts do not look with favor upon a proceeding in the nature of "discovery" which is shown to be merely a "fishing expedition."

Is the petition upon which this proceeding is predicated fatally defective and insufficient as is contended by appellants? It is brought under Section 747, Code 1932, which is in the following language: "Examination of Debtors of Judgment Debtor, or of Persons Having Property Belonging to Him.—After the issuing or return of an execution against property of the judgment debtor, or of any one of several debtors in the same judgment, and upon an affidavit that any person or corporation has property of such judgment debtor, or is indebted to him in an amount exceeding ten dollars, the judge may, by an order, require such person or corporation, or any officer or member thereof, to appear at a specified time and place, and answer concerning the same. The judge may also, in his discretion, require notice

of such proceeding to be given to any party to the action, in such manner as may seem to him proper."

Appellants challenge this petition on the ground that it is not an affidavit, as required by this section; that it does not state that the appellants, or either of them, had property of Mariana T. Heyward or were indebted to her in an amount exceeding ten dollars, or in any amount; that there was no statement of any fact upon the affiant's personal knowledge or, if stated on information and belief, giving the source of the information or the ground of belief; that the petition was nothing more than a "fishing expedition."

The opinion of this Court in the case of *Phillips et al. v. Bruton,* 128 S. C., 369, 122 S. E., 514, 515, has a direct bearing upon this question. That was an appeal from an order denying a motion to revoke an order for examination of defendant in supplementary proceedings. The opinion was by Mr. Justice Marion. The affidavit upon which the order of examination was granted was attacked for that " * * * does not show that the execution issued in the original cause was returned by the sheriff 'unsatisfied, in whole or in part,' and (b) in that the affidavit does not state as a fact that the appellant had property which he unjustly refused to apply to the satisfaction of the judgment." The opinion states: "The movant in the case at bar seems to have made application for the order under the following provision of the statute, section 613."

Continuing the quotation from the opinion of Judge Marion: "The affidavit alleged, on information and belief, that the judgment debtor had property which he unjustly refused to apply toward the satisfaction of the judgment. *Under the express terms of the statute it is only required that the judgment creditor make proof 'to the satisfaction of the court or a judge thereof.'* The sufficiency of the showing made must be determined by the circuit judge *in the exercise of a sound discretion.* We cannot say that the circuit judge was guilty of an abuse of discretion, * * *." (Italics added.)

The appellants appear to rest their challenge of the sufficiency of the petition on the ground that the allegations and verification thereof do not comply with the requirements of the verification necessary to a pleading. We think this conclusion is too technical. If the petition satisfied the trial Judge that there was merit in its prayer, he had the right to permit petitioners to show by competent proof that this was a case in which he could properly exercise his discretion and allow the examination prayed for to be made.

"An affidavit is a written declaration under oath, made without notice to the adverse party." Black's Law Dictionary, 3rd Ed., page 47.

" * * * There can be no doubt that the complaint, which is verified, and may therefore be used as an affidavit in an application for an attachment, fully sets forth the facts sufficient to constitute a cause of action * * *." *Ferst's Sons & Co. v. Powers,* 58 S. C., 398, 36 S. E., 744, 749.

The remedy of attachment is a drastic one, and the provisions of the Code relating thereto must be strictly followed and adhered to. As a condition precedent to issuing the warrant, there must be an affidavit, which must fully set forth the facts justifying the granting of the warrant. Yet it is here distinctly held that the verified complaint will take the place of the affidavit required by the statute. It would seem clear then, that in this proceeding the verified petition will take the place of the affidavit named in Section 747 of the Code.

Appellants rely on the case of *Jenkins v. Bennett,* 40 S. C., 393, 18 S. E., 929, 931. There Chief Justice McIver said: "We think it clear that before this somewhat extraordinary power should be exercised, the moving party should show, at least *prima facie,* such fact or facts as would enable the court to exercise its discretion as to whether such a power as is invoked should be exercised. * * *"

Of this there can be no question, and in our judgment the verified petition satisfies that requirement. The question to which Chief Justice McIver had reference arose under the then Section 389 (Now Section ——), which is in these words: "* * * The Court before which an action is pending, or a Judge or Justice thereof, may, in their discretion and upon due notice, order either party to give to the other, within a specified time, an inspection and copy, or permission to take a copy, of any books, papers, and documents in his possession or under his control, containing evidence relating to the merits of the action or the defence therein. * * *"

If the party fails to comply with such order, the Court may exclude the paper from being given in evidence and/or punish the party not complying, for contempt. It will be observed that the order in such case may be granted *after notice;* no affidavit is required. It is no wonder that the revered Chief Justice called it a "somewhat extraordinary power," and insisted that there should be some showing to enable the Court to exercise its discretion. That case has no bearing on the issues in this case.

The petition shows that in effort to collect plaintiffs' judgment, execution has been issued and returned *nulla bona.* Proceedings were begun for the examination of the judgment debtor; this was barred by her showing of ill health; then this proceeding was begun for the examination of the president and general manager of the Winnsboro Granite Corporation, in which it was stated on information and belief the debtor was a stockholder, and it further alleged on information and belief that the corporation is indebted to the debtor by way of monies, capital stock, bonds and other assets which belong in whole or in part to the said debtor. This was sufficient to satisfy the Court that there should be an examination. To further satisfy himself, the Court permitted respondent to supplement the petition by the introduction of evidence in support of the petition, which fully satisfied him that the order

should be granted. Surely there is no rule of Court, or provision of the Code of Practice, which would prohibit the course which the trial Judge pursued.

"Indeed, the ruling purpose behind this statute and the remedy of discovery 'is to assist and promote the administration of public justice' in courts. *People's Bank v. Helms, supra* [140 S. C., 107, 138 S. E., 622]. * * *" *Mahaffey v. Southern R. Co.,* 175 S. C., 198, 178 S. E., 838.

We think the trial Judge properly exercised his discretion in the premises.

Appellants contend that even if the respondents were entitled to any order, the order granted was too broad and all-inclusive. In other words, their contention is that the order appealed from permits the respondents to embark on a "fishing expedition" in their pursuit of property of the judgment debtor. The Courts do not look with favor upon such "fishing expeditions."

It behooves us to inquire what is a "fishing expedition" in the opinion of the Courts. A striking answer is found in the opinion of this Court in the case of *Boykin v. Hermitage Cotton Mills et al.,* 180 S. C., 364, 185 S. E., 863.

Judge Bellinger, who heard the matter on Circuit, said: "This matter comes before me upon a motion for discovery under the provision of rules 43, 44, 45 and 46 of the circuit court. The cause of action has been commenced and is pending upon a summons (complaint not served), and the plaintiff shows to the satisfaction of this court that discovery is necessary to enable him to intelligently draw his complaint."

The order granted covers three pages of printed matter, and required C. H. Yates and H. G. Carrison, Jr., the executive officers of the Hermitage Warehouse Company, to deposit with the Clerk of Court all the books of account, receipts, the stock book of the corporation, a list of the stockholders, the minutes of the meetings of the stockholders and directors, blue prints of the plans and specifications of the water and electric system connected with the

warehouse sprinkler system, all letters received from the Hermitage Cotton Mills, its officers, directors or any other parties therein concerned with the operation, erection, leasing, or disposition of the warehouse. In addition to the purported copies of leases contained in the return of the Hermitage Cotton Mills, they were required to file copies of any correspondence relating to such leases. R. B. Pitts and C. H. Zemp, as executive officers of the Hermitage Cotton Mills, were required to permit discovery of the books, papers, and documents of said corporation, by depositing with the Clerk of Court the minutes of the meetings of the directors of said coporation from the organization of the warehouse company to August 19, 1935, also the stock book of said corporation, all letters received from the Hermitage Warehouse Company, its officers or directors or from any other parties whatsoever containing any reference to the erection of the aforesaid sprinkler system; a copy of the contract or option executed by Hermitage Cotton Mills to the Bay Company; a sworn list of the officers and directors of the Hermitage Cotton Mills. The opinion of this Court was by Mr. Justice Fishburne. He said:

"In our opinion, the scope of the order in this respect is too broad and all-inclusive. Surely, only comparatively few of these minutes contain any reference to the warehouse company. If discovery were allowed to this extent, the petitioner would obtain a great mass of confidential matter, wholly irrelevant to his cause of action. *  *  *

"Necessarily, in proceedings of this kind, no specific rule can be formulated which will be adequate for all situations. Always the facts and circumstances vary in the particular cases presented. *  *  *

"In our view, the order of discovery should be limited and confined to such minutes and the portions thereof as refer to the Hermitage Warehouse Company. The right to inspect private books and papers is often an important matter in the administration of justice, but the exercise of the right is of such a delicate nature that the courts should care-

fully guard against its abuse. *Whitman v. Weller*, 39 Ind., 515."

Judge Fishburne also cites this: "It was held in *Wells v. Holman*, 115 S. C., 443, 106 S. E., 224, 225: 'It must be assumed that the exercise of the discretion lodged in the circuit judge will prevent an abuse of this privilege in an attempt to embark upon a "fishing excursion" or to pry into the private concerns of the adversary'."

The ultimate decision of the case was that this Court struck a few of the provisions of the order, which it deemed looking into private matters, and affirmed it in all other particulars.

A review of the order in the present case, in comparison with that in the *Boykin case,* must dispose of the suggestion that it is even remotely a "fishing excursion."

In the case of *Floyd v. Victory Savings Bank,* 185 S. C., 87, 193 S. E., 203, this is stated:

"This is an appeal from an order of Hon. G. Duncan Bellinger, resident judge of the Fifth circuit, interpreting the opinion of this court rendered upon a previous appeal (182 S. C., 357, 189 S. E., 462, 467), and specifying in detail the books, papers, and documents required to be deposited with the clerk of the lower court by the appellants for the inspection of respondent under the original order of discovery, which was modified by this court upon the appeal aforementioned. The facts will not be restated as they are set forth in detail in the previous opinion.

"The appeal involves an interpretation of so much of the portion of the opinion on the previous appeal as reads as follows: 'In short, we think the order should be amended by requiring the Victory Savings Bank and N. J. Frederick, as Trustee, to deposit with the clerk of court for Richland county, within ten days after the remittitur in this case goes down, the books, records, papers, files, and accounts of Victory Savings Bank and N. J. Frederick, as Trustee, which relate in any way to the indebtedness of George L. Floyd to the Victory Savings Bank, and that the plaintiff, her attor-

nery and accountants, have twenty days after the notice of the depositing of such documents with the clerk of the court for Richland county to inspect and examine them.' * * *

"Judge Bellinger interpreted the previous opinion as requiring the production of the following: ' * * * the books, records, papers, files and accounts of the Victory Savings Bank and N. J. Frederick, as Trustee, which relate in any way to the indebtedness of George L. Floyd to the Victory Savings Bank, which are dated January 1, 1929, and subsequent thereto, including the general records of the Bank, such as the general ledger, the bank's record or ledger sheet reflecting the receipt of the Floyd insurance money and the disbursements of the same—insurance of G. L. Floyd account—the debit and credit tickets of this account; the bank ledger sheet for the savings account of Rosa L. Floyd; the checks charged against the Rosa L. Floyd account; the debit and credit tickets for any other entries to this account other than by check or deposit; the entire record relating to each of the items totalling $11,904.26, set out on pages 11 and 12 of the Supreme Court Transcript in this case, which were deducted by the Victory Savings Bank from the life insurance money of George L. Floyd; the discount register or registers; the liability ledger or ledgers; the day books, Bank Examiners' Reports; Call statements; the Minutes of the Bank; all of which are dated January 1, 1929, or subsequent thereto.'

"The exceptions challenge this interpretation of the previous opinion as being too broad and as requiring the deposit of records which would necessitate the appellant bank purchasing a new set of books and setting up new records for the purpose of carrying on its daily business.

"The previous opinion describes in general language the books, records, papers, files and accounts of the appellant which should be deposited with the clerk of court for Richland county. While it was intended that the bank and the trustee should produce such records as would facilitate the respondent in ascertaining the amount of the indebtedness

of George L. Floyd to the bank, the amount of insurance moneys received, the disbursements made, and the items for which such disbursements were made, it was not contemplated that the general books of the bank used in its daily transaction should be deposited with the clerk of court, nor that the respondent should be permitted to go upon a fishing expedition for evidence instead of having an inspection of papers reasonably necessary for the statement of the cause of action, which respondent conceives she has against the bank and the trustee.

"It is difficult to specify exactly what books and papers should be deposited without evidence as to the bookkeeping methods of the bank, and its various books and records, but the court is of the opinion that Judge Bellinger's order appealed from requires the production of books and records which would hamper the bank in carrying on its business. The bank should be required to deposit the ledger sheet, or sheets, of all accounts of G. L. Floyd with the bank, the debit and credit tickets for any and all entries thereon, its ledger sheet or sheets representing the receipt of the Floyd insurance money, and the disbursements thereof, together with the debit and credit tickets in connection therewith, the ledger sheet or sheets of the account of N. J. Frederick, as trustee, and the debit and credit tickets in connection with said account, the liability ledger on all notes and obligations of G. L. Floyd to the bank, and in connection with each of the items set forth on pages 11 and 12 of the transcript of record upon the first appeal, paid out of or for which proceeds of the insurance are held by the bank, and that the papers aforementioned include all of said records dated January 1, 1929, or subsequent thereto.

"In addition to the above-described records to be deposited with the clerk of court, the bank is directed to file such other records not now being used in the current business of the bank which would assist respondent's auditors in tracing the items on pages 11 and 12 of the transcript of record in the first appeal, to their inception. The books con-

taining such information need not be filed if the bank prefers furnishing only the pages therefrom on which entries appear which relate to said items, provided the bank annex to such pages information as to the nature of the book from which the page or pages have been removed.

"We do not consider it desirable or proper that the bank should be required to file its discount register or registers, its day books, bank examiner's reports, call statements or minutes of the bank, or any other papers and records not specified hereinabove."

We have set out rather fully the opinions in the cases of *Boykin v. Hermitage Cotton Mills* and *Floyd v. Victory Savings Bank, supra,* because they so aptly and clearly express the views of this Court *in re* the administration of the rules regulating the remedy of discovery. It is made plain that while the Court does not favor needless orders for discovery, which may go too far afield, nevertheless, it does not find it necessary in all such cases to reverse the order. Rather, they prune it of its excesses and affirm it for its virtues. Judged by the rules laid down in those cases, the order of Judge Bellinger in the instant case is not too broad, nor does it provide the excuse for a fishing expedition. It is short and to the point. It directs that Daniel Heyward, the president and general manager of the Winnsboro Granite Corporation, appear before the special Master to be examined "concerning any monies, capital stock, bonds or other assets which Winnsboro Granite Corporation holds for or owes to Mariana T. Heyward and to bring with him for examination the capital stock book of, the inventory of assets and liabilities of, the stockholders list of, and the minute books of Winnsboro Granite Corporation." Surely this cannot be said to be too broad and all-inclusive. Nor can it be denominated a fishing expedition. The purpose is to determine whether the judgment debtor has any property or assets which should be applied to the payment of the judgment. There is made a showing satisfactory to the Court that she is, or recently has been, a stock-

holder in the Winnsboro Granite Corporation. The examination provided for by the order is limited to the determination of that issue.

We cannot say that the trial Judge has abused his discretion in granting it.

The exceptions are overruled and the order appealed from is affirmed.

MR. JUSTICE FISHBURNE and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and WM. H. GRIMBALL concur.

MR. JUSTICE BAKER did not participate.